## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Michael Armstrong ("Armstrong") and AC Sweepers and Maintenance, Inc. ("ACS") and Latasha Crenshaw ("Crenshaw") (collectively, the "Parties").

## RECITALS

**WHEREAS,** Armstrong filed claims (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Michael Armstrong v. AC Sweepers and Maintenance, Inc. and Latasha Crenshaw*, Civil Action No. 1:15-cv-01846-AT (the "Lawsuit"); and

**WHEREAS,** ACS and Crenshaw deny the validity of the Claims and deny that they are subject to any liability for the Claims; and

**WHEREAS,** all monies and wages concededly due to Armstrong have been or will be paid; and

**WHEREAS,** the Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** ACS and Crenshaw are willing to provide Armstrong with certain considerations described below, provided Armstrong releases ACS and Crenshaw from any claims Armstrong has made or might make arising out of his employment or other relationship with ACS and Crenshaw and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1. **Recitals**:  The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2. **Definitions**:  Throughout this AGREEMENT, the term "ACS" shall include the following:

    (A)   ACS, as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

EXHIBIT 1

(B) the owners, officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraph 2(A).

3. **Settlement Sum and Payment**: As consideration for making this AGREEMENT and compliance with the promises set forth herein, ACS agrees to pay to Armstrong the sum of Four Thousand Seven Hundred Fifty Dollars and 00/100 Cents ($4,750.00), less lawful deductions. This sum shall be allocated as follows:

   (A) ACS shall make payment in the amount of Two Thousand Dollars and 00/100 Cents ($2,000.00), less such applicable deductions, payable to Michael Armstrong. This payment shall be characterized as back wages, and ACS will issue Armstrong an IRS Form W-2; and,

   (B) ACS shall make payment to Morgan & Morgan, P.A, Tax Identification Number 59-2920684 in the amount of Two Thousand Seven Hundred Fifty Dollars and 00/100 Cents ($2,750.00) as Attorney's Fees and Costs in this Lawsuit. ACS shall issue IRS Forms 1099 to Armstrong and Morgan & Morgan, P.A. for the amounts paid as Attorneys' Fees and Costs.

   ACS shall deliver the checks identified in Paragraphs 3(A) and 3(B) herein to Morgan & Morgan, P.A. no later than fourteen (14) days after the receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Armstrong; (2) fully-completed W-9 tax forms for Armstrong and Armstrong's attorney; (3) an Order approving the terms of settlement set forth in this AGREEMENT; and (4) an Order from the Court dismissing, with prejudice, all Claims against ACS and Crenshaw in the Lawsuit.

4. **Consideration**: Armstrong understands and agrees that he will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until his execution of this AGREEMENT including the promises contained herein.

5. **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Armstrong, for himself and for each of his heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges ACS and each of its owners, predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") and Crenshaw of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or

unsuspected, that Armstrong may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Armstrong also releases any and all claims he may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Armstrong further represents and affirms that he has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has ACS interfered in any way with his efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Armstrong may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Armstrong understands and agrees that he is releasing ACS and Crenshaw from any and all of the above-specified claims by which he is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Armstrong or on Armstrong's behalf, except as otherwise set forth in this Agreement.

6. **Tax Liability**: Armstrong understands that ACS shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, ACS makes no representation regarding the tax consequences or liability arising from said payments. Armstrong understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is his sole responsibility, and that he will pay any such taxes that may be due or become due. ACS has no monetary liability or obligation to Armstrong regarding payment whatsoever, except as set forth in this AGREEMENT. Armstrong

agrees to bear all tax consequences, if any, attendant upon the payment to him of the above-recited sums.  Armstrong further agrees to hold ACS harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Armstrong.  In the event Armstrong receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against ACS, Armstrong shall promptly, after receipt of such written notice, notify ACS by letter sent to counsel for ACS.

7. **Affirmations**:  Armstrong represents and affirms that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8. **No Further Employment**:  Armstrong acknowledges that his employment with ACS terminated effective on or about February 5, 2015.  Armstrong permanently, unequivocally, and unconditionally waives any and all rights Armstrong may now have, may have had in the past, or may have in the future to obtain or resume employment with ACS.  Armstrong agrees never to apply for employment with ACS, its parent, successors, affiliates, and subsidiaries.  In the event that Armstrong is ever mistakenly employed by ACS, its parent, successors, affiliates, and/or subsidiaries, Armstrong agrees to have his employment terminated with no resulting claim or cause of action against ACS, its parent, successors, affiliates, and/or subsidiaries.

9. **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10. **Non-Disparagement**:  Armstrong agrees that he will not provide information, issue statements, or take any action, directly or indirectly, that would cause ACS embarrassment or humiliation or otherwise cause or contribute to ACS being held in disrepute.

11. **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.

12. **Conditions**:  Should Armstrong ever breach any provision or obligation under this AGREEMENT, Armstrong explicitly agrees to pay all damages (including, but

    not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by ACS as a result of Armstrong's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies ACS may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**:  The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by ACS of any liability or unlawful conduct of any kind.

14. **Headings**:  The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**:  This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties.  Armstrong agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever.  No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged.  The parties acknowledge that only Crenshaw has the authority to modify this AGREEMENT on behalf of ACS.

16. **Interpretation**:  The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable.  However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT.  To the extent any provision herein that relates to the dismissal of Armstrong's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, ACS is not obligated to honor any of the terms set forth herein and Armstrong shall return any amounts paid by ACS.

18. **Binding Nature of Agreement**:  This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives,

executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of ACS to Armstrong.  Armstrong acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph.  Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

> ACS
> c/o Andrews & Stembridge, LLC
> 2951 Piedmont Road, Suite 300
> Atlanta, Georgia 30305
>
> Michael Armstrong
> c/o Morgan & Morgan, P.A.
> 20 N. Orange Ave., 14th Floor
> P.O. Box 4979
> Orlando, FL 32802-4979

21. **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

ARMSTRONG IS HEREBY ADVISED THAT HE HAS UP TO SEVEN (7) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.

HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, ARMSTRONG FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST ACS.

ACCEPTED AND AGREED:

By: _____  9/30/15
MICHAEL ARMSTRONG         Date

ACCEPTED AND AGREED:

By: _____  10/5/2015
ACS                        Date

EXHIBIT 1

Scanned by CamScanner